IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DONNA SCHWENK, and LEONARD SCHWENK, husband and wife, ) ) ) ) Plaintiffs, ) ) v. ) ) ) THE HOME DEPOT U.S.A. d/b/a ) THE HOME DEPOT, a Delaware ) corporation, ) ) Defendant. ) _____ ) | Civ. No. 07-0134-N-BLW MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

The Court has before it Home Depot's renewed motion for judgment as a matter of law and motion to certify questions to the Idaho Supreme Court. For the reasons explained below, the Court will deny both motions.

## LITIGATION BACKGROUND

Plaintiff Donna Schwenk was employed as a sales associate for Excel Garden Products, a subsidiary of Central Garden and Pet ("Excel"). Excel sells and delivers products to Home Depot. Schwenk's duties included stocking and maintaining product displays in the various retail outlets, like Home Depot, where

**Memorandum Decision & Order – page 1**

Excel products are sold.

In January of 2005, Excel sent Schwenk and another associate, Tim Ippolito, to a new Home Depot store in Sandpoint to spend about a week setting up displays. By the time Schwenk arrived in Sandpoint, Excel's products had already been delivered and were stacked outside, in an area not cleared of snow and ice. Schwenk had made numerous requests of Home Depot employees to move the products inside, but was ignored. As she tried to move the pallets inside with a hand pallet jack, she slipped and was injured.

Excel had workers' compensation insurance, and the carrier accepted Schwenk's work-related claim. Schwenk then filed this action against Home Depot claiming that it created and maintained a hazardous condition on its premises.

Home Depot filed a motion for summary judgment arguing that it was immune from liability under Idaho's worker's compensation law, specifically I.C. § 72-223. That law, to be discussed further below, provided that Home Depot would be immune if (1) there was an express or implied contract for Excel to provide set up services for Home Depot (known as category one immunity), or (2) if Home Depot could have done the product set-up work itself (known as category two immunity). Under Idaho law this immunity is symmetrical with liability for

**Memorandum Decision & Order – page 2**

worker's compensation benefits – that is, Idaho law bestows immunity from third-party suits on entities falling under either category because, by virtue of falling under either category, the entity would have been liable to pay worker's compensation benefits to the injured employee if her direct employer failed to obtain coverage. *See Robison v. Bateman-Hall*, 76 P.3d 951 (Id.Sup.Ct. 2003). So immunity follows exposure. In this case, the Court found questions of fact as to whether either of the categories applied to Home Depot, and accordingly denied its motion for summary judgment.

The case then proceeded to trial. Home Depot continued to argue that it was entitled to category one immunity because an express contract existed between it and Excel for the provision of services by employees like Schwenk to set up products in Home Depot stores. However, during trial no express contract for such services was ever produced, and at the conclusion of the trial, the Court granted Schwenk's motion under Rule 50, ruling that Home Depot had not proven any express contract.

When Schwenk rested her case, Home Depot made a Rule 50 motion on the statutory employer defense. The Court denied the motion, ruling as follows:

> As to the category 1 and 2 exemptions, I think there is, without a doubt, a question for the jury as to whether there was an implied contract for services. With regard to whether or not the category 2 exemption applies, I likewise feel that there is an issue for the jury; although, a

**Memorandum Decision & Order – page 3**

>closer look as to whether Home Depot had employees at this point in time during the start-up of this new store who could perform the work at that time, I think the testimony that was offered indicated that 90 percent of the work – of all this stocking of shelves during this time frame was done by the vendors and that they [Home Depot] did not have the people with the real expertise in doing that who had been trained up to that point in time. Now, perhaps a month or two later when they [Home Depot] had people who had been there a little bit longer and been trained, it might as well be a different matter. I might be inclined if the accident had occurred not during start-up but when [the] Home Depot store there was in day-to-day operations, it might [be] a tougher call. But I think at this time, I think there is an issue of fact for the jury and I'll submit it to the jury, as well.

*See Transcript* at pp. 14-15 (attached to Affidavit of Howard). The Court then submitted the issues to the jury on a Special Verdict Form.

The jury found, (1) that Home Depot's negligence was the proximate cause of Schwenk's injuries, (2) that Schwenk's negligence contributed to her injuries, and (3) that Home Depot was 75% responsible and Schwenk was 25% responsible. The jury awarded $185,952 in non-economic damages and $353,359 in economic damages. Finally, the jury answered "no" to each of the following two questions: (1) Did Donna Schwenk's direct employer have an implied-in-fact contract with Home Depot to provide product set-up services in Home Depot stores?; and (2) Was Home Depot capable of performing the work done by Donna Schwenk with its own manpower and equipment?

Based on this Special Verdict Form, the Court apportioned liability and

**Memorandum Decision & Order – page 4**

entered a Judgment for Schwenk in the sum of $404,483.25. Home Depot now renews its motion for judgment as a matter of law and also moves to certify questions to the Idaho Supreme Court.

## ANALYSIS

1. **Motion for Judgment as a Matter of Law**

Home Depot's motion for judgment as a matter of law is governed by Rule 50 and requires a showing by Home Depot that the evidence, construed in the light most favorable to Schwenk, permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict. *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002). "Although the court's ruling on an alternative motion for a new trial involves the exercise of some discretion, a stringent standard applies when the motion is based on insufficiency of the evidence." *E.E.O.C. v. Pape Lift, Inc.*, 115 F.3d 676, 680 (9th Cir. 1997). A motion will be granted on this ground only if the verdict "is against the great weight of the evidence, or it is quite clear that the jury has reached a seriously erroneous result." *Id.*

Home Depot argues that the "jury response [finding no implied-in-fact contract] is completely unsupported by the evidence at trial and is most likely the product of jury sympathy for the plaintiff." *See Home Depot Brief* at p. 8. The Court disagrees. The Court instructed the jury that Home Depot had the burden of

proving, among other things, that "[t]he circumstances imply a promise by Home Depot to compensate Ms. Schwenk's direct employer for such services." There was no evidence on the course of dealing between Excel and Home Depot that explained why Excel provided employees to do set up work at Home Depot's Sandpoint store. The jury had no way of knowing if Home Depot promised to pay Excel for Schwenk's work or if Excel was providing it to curry favor with a vendee.

Home Depot asks, "[i]f there was not an agreement between Excel and Home Depot then what was Excel doing there? Were they trespassers?" *See Home Depot Brief* at p. 3. But to prove an implied-in-fact contract, Home Depot had to do more than show Excel's approved presence in Home Depot's store. That Home Depot permitted Excel to do the set up work does not establish that Excel was contractually obligated to do that work. Home Depot carries the burden to show some implied agreement that created an obligation on the part of Excel to do the set up work. Thus, Excel's work in Home Depot's store does not lead irrefutably to the conclusion that an implied-in-fact contract existed. The Court cannot find that the jury rejected conclusive evidence in making its finding.

Formation of a contract is generally a question of fact for the trier of fact to resolve. *P.O. Ventures Inc. v. Loucks Family Irrevocable Trust*, 159 P.3d 870, 874

**Memorandum Decision & Order – page 6**

(Id.Sup.Ct. 2007). The jury's finding that no implied-in-fact contract existed is not against the great weight of the evidence or a seriously erroneous result.

The same analysis applies to the jury's finding that Home Depot was not capable of performing the work done by Schwenk with its own manpower and equipment. Because product set-ups required expertise, vendors did about 90% of the product set-up in Home Depot's stores, and in the Sandpoint store in particular. The testimony of Wayne Henton, an Assistant Manager with Home Depot's Sandpoint store, was that 65 of the new store's 75 employees were new hires. He testified that the set-up was hectic – Schwenk described it as chaotic – because they had just a few weeks to install some $7 million in new products for the store's grand opening.

There was also testimony from Home Depot employees that (1) they had the necessary equipment, and (2) they were capable of doing the set-up themselves. While their former point is undisputed, their latter point is disputed. From the evidence discussed above, the jury could have reasonably disregarded Home Depot's testimony and concluded that they were not capable based on (1) the chaos surrounding the new opening, (2) the speed at which the set-up had to be completed, and (2) the lack of expertise on the part of Home Depot's staff to do set-up work that required expertise.

**Memorandum Decision & Order – page 7**

Home Depot argues, however, that the Court erred as a matter of law in instructing the jury. Specifically, Home Depot argues that for category one immunity, Home Depot need only show that it entered into a contract with Excel, not that it contracted for Excel's services in product set-up. In other words, the contract between Home Depot and Excel for the sale of garden products was all that was required for category one immunity, according to Home Depot.

But this ignores the Idaho Supreme Court's "decision tree," which requires that the immunity analysis under I.C. § 72-223 begin with a determination whether the party seeking immunity is an employer as defined in I.C. § 72-102(13)(a). *Robison*, 76 P.3d at 955. "[T]hose parties deemed employers for the purpose of being liable for worker's compensation benefits under I.C. § 72-102 are the same parties deemed immune from third-party liability under I.C. § 72-223." *Id*.

Thus, beginning with I.C. § 72-102(13)(a), an employer is defined as "any person who has expressly or impliedly hired or contracted the services of another." It is a contract for services that is required, not just any contract. Thus, Home Depot had to show that it entered into a contract of services with Excel, and that is how the Court instructed the jury. Accordingly, the Court rejects Home Depot's interpretation.

2.      **Motion to Certify**

**Memorandum Decision & Order – page 8**

The Court can find no reason to certify any issues to the Idaho Supreme Court. This matter was resolved on the basis of established Idaho law, and there was no need to expand on that law or push into new territory. The Court will therefore deny this motion.

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion for judgment as a matter of law (docket no. 77) is DENIED.

IT IS FURTHER ORDERED, that the motion to certify (docket no. 79) is DENIED.



DATED: **February 4, 2009**

_____
Honorable B. Lynn Winmill
Chief U. S. District Judge